UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:08CV-5-JHM

HEATHER OZEE                                                                   PLAINTIFF

V.

HENDERSON COUNTY, KENTUCKY                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion for summary judgment on Plaintiff's claim of discrimination under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, and Kentucky Revised Statute ("KRS") § 344.010 *et seq.* For the reasons that follow, Defendant's motion is **GRANTED**.

### I. FACTS

On April 30, 2007, Heather Ozee interviewed with Major Mitzi Dunlap for a position as a Deputy Jailer at the Henderson County Detention Center. The next day, Dunlap called Ozee and offered her the job, provided that she pass the preemployment drug test. When that test came back positive for PCP, Dunlap called Ozee and gave her the bad news. Ozee told Dunlap that the result was impossible and inquired about a second test. However, the Detention Center did not allow for one. On May 4, 2007, Ozee nonetheless acquired a second drug test, at her own expense, from a local hospital. That test came back negative.

1

On May 11, 2007, Ozee met with Jailer Herrington to ask for verification of the first drug test, acceptance of the second drug test, or some similar accommodation. She informed Herrington of her sleep epilepsy and suggested that the Lamictal (which she took for seizures) or the combination of Lamictal and Claritin (which she took for allergies) caused the positive result. Herrington noted that Plaintiff's seizure medication was the only drug listed on the test form, albeit incorrectly spelled, and that Southern Health Partners assured him that it would not cause a false positive for PCP. Plaintiff explained that she had told the nurse who filled out the form that she was also taking Claritin. However, since Claritin was not on the form, Herrington would not consider it.

By way of compromise, Herrington told Ozee that she could reapply for a Deputy Jailer position with the Detention Center in six months. In November 2007, Ozee did reapply, but was not called for an interview, possibly because there were no female jailer positions open at that time. On January 8, 2008, she brought this action alleging that the Detention Center discriminated against her under the ADA by, inter alia, failing to provide her with a reasonable accommodation in the form of reconsideration of her May 2007 drug test. In May 2008, Ozee once again applied for the Deputy Jailer position; she was interviewed, passed a drug test, and was hired. To this day, she works third shift at the Detention Center and has had no need for an accommodation for her sleep epilepsy.

## II. STANDARD OF REVIEW

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

Plaintiff argues that the Detention Center discriminated against her because of her disability when it failed to engage in the ADA's interactive process to provide a reasonable accommodation that included reconsidering the result of her preemployment drug test.[1]  Defendant contends that summary judgment should be entered on Plaintiff's claim for discrimination under the ADA because the Henderson County Detention Center did not know of her sleep epilepsy until after Plaintiff was "not hired" on the basis of her positive drug test; because a "positive drug test is not a disability"; and because requiring the Detention Center to double-check or otherwise reconsider the results of its preemployment drug tests would constitute an "undue hardship."  The Court will grant the motion because it substantially agrees with Defendant's second claim.

In general, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  One form of "discrimination" under the ADA is a covered entity's failure to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified

---

[1] Plaintiff also appears to set out a separate claim of discrimination in Count II of her complaint for "terminating her employment because of her disability." (Complaint, p. 5).  The Court thinks it likely—given the absence of any other evidence of discrimination in the record and given Ozee's failure to separately address this claim in her response—that this count is merely a duplication of Ozee's "reasonable accommodations" claim.  Nevertheless, if it is intended as separate claim it too fails for the reasons stated in this opinion.

4

individual with a disability who is an applicant or employee . . . ." 42 U.S.C. § 12112(b)(5)(A); Logan v. Marathon Petroleum Co., LLC, 196 Fed. Appx. 406, 407 (6th Cir. 2006) (noting that federal law is appropriate for analyzing claims under KRS § 344.010 *et seq* because the statute is modeled after the ADA); see also Kleiber v. Honda of Am. Mfg., 485 F.3d 862, 868-69 (6th Cir. 2007).

"[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." Kleiber, 485 F.3d at 868. The idea is that "if the fact-finder accepts the employee's version of the facts, no inference is necessary to conclude that the employee has proven this form of discrimination" because not providing the accommodation *is* the discrimination. Id. at 868. To state such a claim, a plaintiff must show (1) that she is disabled and (2) that she is "otherwise qualified" for the position. Id. at 869. "The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer." Id. (quoting Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir.), *cert. denied*, 543 U.S. 817 (2004)).

In this case, Plaintiff's claim for a reasonable accommodation turns on an antecedant question: whether her failure to pass the drug test was the result of her disability. The purpose of the "reasonable accommodation" requirement, as with the ADA generally, is to "enable the [disabled] employee to enjoy an equal opportunity for benefits and privileges of employment as are enjoyed by employees without disabilities."

Peques v. Emerson Electric Co., 913 F.Supp. 976, 981-82 (N.D. Miss. 1996); Americans with Disabilities Act of 1990, §§ 101(9), 102(b)(5)(A), 42 U.S.C.A. §§ 12111(9), 12112(b)(5)(A). It accomplishes this purpose by requiring employers to reasonably accommodate the known limitations of the employee's disability, i.e., "those criteria that he or she *cannot meet because of a disability*." House Report at 64, reprinted in 1990 U.S.C.C.A.N. at 347 (emphasis added). Consequently, a logical prerequisite to the employer's duty to provide an accommodation is the existence of "barriers to [the employee's] job performance *caused by the disability*." Id. at 66, reprinted in 1990 U.S.C.C.A.N. at 348 (emphasis added); see 29 C.F.R. § 1630.2(o)(3).

There are no such barriers here. Although Ozee has alleged that her failure to pass the preemployment drug test was a limitation caused by her disability because she needed to take medicine for her seizures and some interaction between that medicine and her allergy medicine might have caused the "false positive" for PCP, she has adduced no competent evidence in support of this theory. In the absence of anything in the record to show that an interaction between Lamictal and Claritin *could* cause a false positive for PCP, no reasonable jury could conclude that it *did* so simply because Ozee passed another drug test a few days later. Accordingly, the Court finds that on the record presented the Detention Center had no obligation to engage in the ADA's interactive process because Ozee has not shown that her result on the drug test was a barrier to job performance caused by her sleep epilepsy.

Furthermore, even if Plaintiff had shown that her failure to pass the drug test was a

result of her sleep epilepsy, the Court finds that she has failed to state a prima facie case of discrimination under the ADA because she has not shown that her epilepsy qualifies as a disability.[2] The ADA defines a disability as "a physical or mental impairment that *substantially limits* one or more of the major life activities of an individual; a record of such impairment; or being regarded as having such an impairment." See 42 U.S.C. § 12102(2); 29 U.S.C. § 12102(2) (emphasis added). "'Substantially limits' creates a demanding standard for qualifying as disabled." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002). In particular, an individual must be "[u]nable to perform a major life activity that the average person in the general population can perform; or [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a . . . major life activity as compared to the condition, manner, or duration under which the average person . . . can perform that . . . activity."[3] 29 C.F.R.

---

[2] The Court recognizes that the Defendant did not brief this issue, and that Plaintiff views this as a "[concession] that a genuine issue of material fact exists with regard to the existence of a qualifying disability." (Response, p. 4). However, whether the Defendant has disputed the underlying facts is one question, and whether those underlying facts are legally sufficient is quite another. Here, the Court finds that the undisputed facts concerning Ozee's sleep epilepsy are insufficient to show that she has a qualifying disability.

[3] Plaintiff correctly observes that Congress amended the ADA in September 2008 to significantly alter the test for whether an impairment qualifies as a disability, e.g., it overruled Sutton v. United Air Lines, 527 U.S. 471, 488 (1999) and Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002) and directed the EEOC to jettison the "significantly restricts" standard in favor of "broad coverage." ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008). However, this case concerns whether Ozee had a disability at the time she requested an accommodation in May 2007; and the Amendments did not become effective until "January 1, 2009," and they are not retroactive. Id.; see Rudolph v. U.S. Enrichment Corp., Inc., 2009 WL 111737, *4-6 (W.D. Ky. 2009) (concluding that under the traditional analysis the ADA Amendments are not retroactive because Congress did not clearly

§ 1630.2(j)(1)(i)-(ii); see also 29 C.F.R. § 1630.2(j)(2).

Here, Ozee argues that her sleep epilepsy is a physical impairment that substantially limits her major life activity of sleeping. The Court has no doubt that sleep epilepsy is a physical impairment and that sleeping is a major life activity. Greathouse v. Westfall, 212 Fed. Appx. 379, 382 (6th Cir. 2006). The question is whether Ozee's sleep epilepsy "substantially limits" her sleeping. In answering that question, the Court is guided by the Sixth Circuit's decisions in Linser v. State of Ohio, Department of Mental Health, 234 F.3d 1268 (table), 2000 WL 1529809 (6th Cir. 2000), Boerst v. Gen. Mills Operations, Inc., 25 Fed. Appx. 403 (6th Cir. 2002), Swanson v. University of Cincinnati, 268 F.3d 307, 316 (6th Cir. 2001), and Verhoff v. Time Warner Cable, Inc., 299 Fed. Appx. 488, 492 (6th Cir. 2008).

In Linser, the United States District Court for the Northern District of Ohio granted summary judgment for an employer on the ground that an employee alleging discrimination under the ADA failed to show that her migraines, anxiety attacks, and chronic muscle and cervical tension "substantially impaired" her ability to sleep. Id. at *3. On appeal, the Sixth Circuit agreed. It held that Linser's claim that "she wakes up in the middle of the night about twice a week and typically gets only five hours of sleep" was insufficient for a jury to reasonably conclude that she was "[s]ignificantly restricted as to the condition, manner or duration" of her sleeping as "compared to the . . . average

---

express such an intent and because they would "potentially increase [the employer's] liability for past conduct."). Accordingly, the Court analyzes Ozee's claim under the earlier law.

person." Id. at *1, *3; 29 C.F.R. § 1630.2(j)(1)(i)-(ii); accord Swanson, 268 F.3d at 316 ("While less than five hours sleep is not optimal, it is not significantly restricted in comparison to the average person in the general population.").

Similarly, in Boerst, a plaintiff claimed that he suffered a substantial limitation on his ability to sleep because he could "only get [between] two [and] four hours" of sleep every night. Id. at 407. The district court, citing Linser, granted summary judgment for the employer on the ground that the plaintiff had failed to state a prima facie case of discrimination under the ADA because he had not shown that he was substantially limited in the major life activity of sleeping. The Sixth Circuit once again affirmed. It explained that while "[g]etting between two and four hours of sleep a night [is] inconvenient, [it] simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." Id. at 407; see also Verhoff, 299 Fed. Appx. at 492 (rejecting claim that major life activity of sleeping was "substantially impaired" where plaintiff was limited "to roughly five hours of sleep per evening.").

The facts are much the same here. In this case, Ozee has testified that her sleep epilepsy "causes her to lose her breath, awaken suddenly and stiffen her limbs." (Ozee deposition, p. 7). Notably, however, she has offered no evidence or allegation that her seizures last for more than a few minutes or that they prevent her from going back to sleep in short order. Even more importantly, she has admitted that "with her medication,

9

[she only] suffer[s] from night seizures *one to three times a month*."[4] (Plaintiff's Response, p. 4; Ozee deposition, p. 8) (emphasis added). In light of this evidence, and in mind of the aforementioned case law, the Court finds that even if Ozee had established that her failure to pass the preemployment drug test was a result of her sleep epilepsy, she has failed to state a prima facie case of discrimination under the ADA because no reasonable jury could conclude that her epilepsy "significantly restrict[s]" her sleeping vis-a-vis that of "an average person." 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's claim of discrimination under the ADA, as amended, 42 U.S.C. § 12101 *et seq.*, and KRS § 344.010 *et seq.* is **GRANTED**.

cc: Counsel of Record

---

[4] Plaintiff states, and the Court has no reason to doubt, that her epilepsy would be more severe and the limitation on her major life activity of sleeping more substantial if she were not taking Lamictal. However, that fact is irrelevant to the analysis. The determination of whether an individual is "substantially limited" by a disability is made "with reference to corrective measures." Sutton v. United Air Lines, 527 U.S. 471, 488 (1999). "[O]ne has a disability under [§ 12102(2)(A)] if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity." Id.